**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| HW PREMIUM CBD, LLC, AJ's HEALTH AND WELLNESS d/b/a AMERICAN SHAMAN, E. KRIEGER LAND, LLC d/b/a GREENE GOODS MARKET & GREENHOUSES, GREEN ONYX INC. d/b/a YOUR CBD STORE, BEYOND CBD, LLC d/b/a BEYOND CBD, CAMPBELL'S NUTRITION CENTERS, INC., TCI ENTERPRISE, INC. d/b/a SKY HIGH, ICANNA, LLC, YOUR CBD STORES FRANCHISING, LLC | Case No. |
| Plaintiffs, | |
| v. | **REQUEST FOR EXPEDITED RELIEF** |
| GOVERNOR KIM REYNOLDS in her official capacity, DIRECTOR OF IOWA DEPARTMENT OF HEALTH AND HUMAN SERVICES KELLY GARCIA in her official capacity, COMMISSIONER OF IOWA DEPARTMENT OF PUBLIC SAFETY STEPHAN BAYES in his official capacity, and IOWA SECRETARY OF AGRICULTURE MIKE NAIG in his official capacity. | |
| Defendants. | |

---

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

---

Plaintiffs HW Premium CBD, LLC ("HW"), AJ's Health and Wellness d/b/a American Shaman ("AJ's Health and Wellness"), E. Krieger Land, LLC d/b/a Greene Goods Market and Greenhouses ("Greene Goods"), Green Onyx, Inc. d/b/a Your CBD Store ("Your CBD"), Beyond CBD, LLC d/b/a Beyond CBD ("Beyond CBD"), Campbell's Nutrition Centers, Inc. ("Campbell's"), TCI Enterprise, Inc. d/b/a Sky High ("Sky High"), Icanna, LLC ("Icanna"), and

Your CBD Stores Franchising, LLC ("Your CBD Franchising") (collectively, "Plaintiffs") for their Complaint against Defendants Governor Kim Reynolds in her official capacity ("Reynolds"), Director of Iowa Department of Health and Human Services Kelly Garcia in her official capacity ("Garcia"), Commissioner of the Iowa Department of Public Safety Stephan Bayes in his official capacity ("Bayes"), and Iowa Secretary of Agriculture Mike Naig in his official capacity ("Naig") (collectively, "Defendants"), state and allege as follows:

## INTRODUCTION

1.      This case challenges the constitutionality of Iowa's H.F. 2605 and H.F. 2641 (the "Hemp Amendments"), both of which substantially expand Iowa's regulation of hemp and hemp products, as well as the penalties for the retail sale, distribution, manufacturing, possession, and use of hemp and hemp products. Most significantly, the Hemp Amendments egregiously limit how much delta-9 THC concentration can be present in a serving size and container, representing a de facto shutdown of the Iowa cannabinoid business; prohibit the use of synthetic tetrahydrocannabinol ("THC") in any consumable hemp product, without stating how and what will be considered synthetic, and raw flower hemp products for the purpose of inhalation; implement onerous labeling requirements for consumable hemp products; limit consumption of such products to Iowans who are at least 21 years old with no exceptions for medical necessity; and recriminalize hemp-derived products that are not compliant with the Hemp Amendments.

2.      The Hemp Amendments were signed by Governor Reynolds into law on May 17, 2024. The Hemp Amendments will become effective on July 1, 2024, a mere *six weeks* after they were signed by the Governor.  A true and correct copy of H.F. 2605 is attached as Exhibit A, and a true and correct coy of H.F. 2641 is attached hereto as Exhibit B.

3.     The Hemp Amendments provide no allowance for existing hemp derived products that have been legal to sell in Iowa since 2020 to be sold through following the Hemp Amendments going into effect on July 1.  As a result, the Hemp Amendments criminalize the possession of hemp derived products that are legal in Iowa if any person or commercial establishment have such products as of 12:01 A.M. on July 1, 2024. Such products will be immediately deemed as controlled substances under the Hemp Amendments, and individuals or entities in possession of such products will be at immediate risk of criminal and civil enforcement.

4.     The Hemp Amendments require the Iowa Department of Health and Human Services ("DHHS") to promulgate regulations to implement and address enforcement of H.F. 2605. *See* H.F. 2605 §§ 4, 5.

5.     DHHS has proposed regulations to implement and address enforcement of H.F. 2605, but such regulations are only in their draft form and have not been promulgated. DHHS has stated that it intends to adopt the final rules *no earlier* than July 17, 2024, as such regulations are still currently set for public comment and hearing to occur *after* the Hemp Amendments go into effect on July 1, 2024.

6.     The Hemp Amendments give the Iowa Department of Agriculture and Land Stewardship ("DALS") the authority to promulgate regulations to implement and address enforcement of Chapter 204A, contained in the amendments in H.F. 2641. DALS has neither proposed nor promulgated any regulations regarding Chapter 204A.

7.     The Plaintiffs will be stuck in a regulatory limbo as of July 1, 2024. Their products must comply with the Hemp Amendments beginning on July 1, 2024 but many of the key requirements are not defined, explained, or provided for in the Hemp Amendments and will not be promulgated as rules by DHHS until, at the very earliest, July 17, 2024.

8.      The Plaintiffs cultivate, manufacture, distribute, and sell hemp and hemp-derived products in and out of Iowa. Up until July 1, 2024, the Plaintiffs have operated for several years in a legal market through a supply chain of farmers, manufacturers, distributors, and retailers throughout Iowa and the country.

9.      In 2018, Congress passed, and the President signed into law, the Agriculture Farm Improvement Act (commonly referred to as the "2018 Farm Bill") which legalized the cultivation and possession of hemp and hemp-derived products. Pub. L. 115-334, 132 Stat. 4490. The 2018 Farm Bill expanded the 2014 Farm Bill's definition of hemp to include "the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivates, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639*o*(1).

10.     The Hemp Amendments alter the definition of "consumable hemp products" or otherwise limit what is considered a "consumable hemp product" in a way that excessively restricts what products are legal in Iowa in three primary ways.

11.     First, the Hemp Amendments state that a hemp product is deemed to be a "consumable hemp product" only if its maximum THC concentration is less than or equal to the lesser of the following: (a) "Three-tenths of one percent on a dry weight basis," (b) "Four milligrams per serving and ten milligrams per container on a dry weight basis." H.F. 2605 § 2.

12.     Second, the Hemp Amendments require each container storing consumable hemp products to be affixed with a warning notice advising consumers "regarding the risks associated with its use." H.F. 2605 § 4. The Hemp Amendments do not provide the language that should be included in the notice, and instead delegate that task to DHHS.

13. Third, the Hemp Amendments prohibit the use, marketing, and distribution of a raw or dried flower form of hemp for the purposes of inhalation as well as the manufacture, production, distribution, marketing, or sale of a "synthetic hemp product, as defined by rules adopted by [DHHS]." H.F. 2605 § 8.

14. Only hemp products that meet the standards prescribed in the Hemp Amendments and regulations promulgated by DHHS are considered consumable hemp products, and only consumable hemp products manufactured, sold, or consumed in compliance with Iowa law are excluded from the definition of a "controlled substance." ICA § 204.7(8)(f); H.F. 2605 § 5; ICA § 124.204. Additionally, only the production, use, harvest, transportation, delivery, distribution, or sale of cannabis that complies with newly-created chapter 204A and chapter 204 is excluded from the definition of a controlled substance. H.F. 2641 § 40.

15. The Hemp Amendments' prohibitions regarding what consumable hemp products may be sold, manufactured, possessed, used, or transported in and through Iowa is in direct contravention of the broad definition of hemp (and products derived from hemp) contained in the 2018 Farm Bill. The Hemp Amendments impermissibly recriminalize and reclassify as controlled substances hemp products that comply with the 2018 Farm Bill.

16. The Iowa Hemp Act already provides that consumable hemp products that do not comply with the law are considered "controlled substances" under Iowa Law. ICA § 204.7(8)(f), and the Hemp Amendments state that only hemp that complies with Chapter 204A and Chapter 204 is not considered a controlled substance. H.F. 2641 § 40. Given the multiple prohibitions or other limitations placed on hemp and consumable hemp products by the Hemp Amendments, hemp and consumable hemp products that are currently federally legal and legal under Iowa law (and have been since at least 2020) will once again be considered illegal controlled substances.

17. Because the Hemp Amendments recriminalize non-compliant hemp products, the Hemp Amendments also interfere with the interstate transportation and shipment of consumable hemp products that are legal under the 2018 Farm Bill. The Hemp Amendments' restrictions for a legal consumable hemp product further directly and impermissibly restrict the definition of hemp provided in the 2018 Farm Bill.

18. The Hemp Amendments criminalize hemp and consumable hemp products that are not compliant with the Hemp Amendments and/or Iowa Code Chapter 204 or Chapter 204A in a manner that a person of ordinary intelligence cannot discern what precise behavior is illegal or discern how to comply with the laws.  Critical phrases are not defined, specifications for how to comply with provisions are not provided, and the regulations intended to provide such definitions or instructions will not be promulgated until *at least* two weeks after the laws go into effect. This vagueness also leaves the door open to arbitrary enforcement of the law.

19. Additionally, the Hemp Amendments enact new requirements that deprive the Plaintiffs of all, or nearly all, economically beneficial use of their property contrary to the Plaintiffs' reasonable investment-backed expectations in their lawful businesses. Alternate, less restrictive and severe measures were available to the State of Iowa if the goal was to target the availability of the products to a person under 21 years of age.

20. Finally, the Hemp Amendments' criminalization of consumable hemp products that are compliant with the federal definition of hemp imposes a clearly excessive burden on interstate commerce that is excessive in relation to its putative local benefits.

## JURISDICTION AND VENUE

21. This Court has jurisdiction over this complaint for declaratory and injunctive relief pursuant to Fed. R. Civ. P. 57, 28 U.S.C. § 2201, 28 U.S.C. § 1441(a), and Fed. R. Civ. P. 65.

22.     This Court has authority to enjoin enforcement of the Hemp Amendments prohibitions under 42 U.S.C. § 1983 and 28 U.S.C. § 2201.

23.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because this is the judicial district in which all Defendants reside.

## PARTIES

24.     Plaintiff HW Premium CBD, LLC ("HW") is an Iowa limited liability company with a principal place of business in Urbandale, Iowa. HW sells a variety of consumable hemp products containing CBD derived from industrial hemp, which are reviewed and approved by DHHS and meet the definition of hemp products permitted by the 2018 Farm Bill, and is licensed and registered with DHHS to sell such products in the state of Iowa.

25.     Plaintiff AJ's Health and Wellness, LLC d/b/a American Shaman ("AJ's Health and Wellness") is an Iowa limited liability company. AJ's Health and Wellness is registered with DHHS to sell consumable hemp products in Iowa and sells a variety of consumable hemp products containing cannabidiol ("CBD") and THC derived from industrial hemp, which are reviewed and approved by DHHS and meet the definition of hemp products permitted by the 2018 Farm Bill. AJ's Health and Wellness is registered with DHHS to sell consumable hemp products in Iowa. AJ's Health and Wellness operates three retail locations in Iowa, including Altoona, IA, West Des Moines, IA, and Indianola, IA.

26.     Plaintiff E. Krieger Land, LLC d/b/a/ Greene Goods Market & Greenhouses ("Greene Goods") is an Iowa limited liability company with a principal place of business in Jefferson, Iowa. Greene Goods produces (as defined by ICA § 204.2(15)) and sells consumable hemp products in Iowa. Greene Goods is licensed and registered with DHHS to sell consumable hemp products, and the consumable hemp products it sells are reviewed and approved by DHHS

and meet the definition of hemp products permitted under the 2018 Farm Bill. Greene Goods is also licensed and registered with the Iowa Department of Agriculture and Land Stewardship ("DALS") to produce hemp in Iowa, and the hemp it produces is reviewed and approved by DALS and meets the definition of hemp permitted under the 2018 Farm Bill.

27.     Plaintiff Green Onyx, Inc. d/b/a Your CBD Store ("Your CBD") is an Iowa corporation with a principal place of business in West Des Moines, Iowa. Your CBD sells a variety of consumable hemp products containing CBD derived from industrial hemp, which are reviewed and approved by DHHS and meet the definition of hemp products permitted by the 2018 Farm Bill, and is licensed and registered with DHHS to sell such products in the state of Iowa. Your CBD stores are franchises of Sunmed™ Your CBD Store, which is a national franchise that specializes in cannabidiol (CBD) products.

28.     Plaintiff Beyond CBD, LLC d/b/a Beyond CBD ("Beyond CBD") is an Iowa limited liability company with a principal place of business in Des Moines, IA. Beyond CBD sells a variety of consumable hemp products containing CBD and THC derived from industrial hemp, which are reviewed and approved by DHHS and meet the definition of hemp products permitted by the 2018 Farm Bill. Beyond CBD is licensed and registered with DHHS to sell such products in the state of Iowa.

29.     Plaintiff Campbell's Nutrition Centers, Inc. ("Campbell's") is an Iowa corporation with a principal place of business in Des Moines, Iowa and Urbandale, Iowa. Campbell's sells a variety of consumable hemp products containing CBD and THC derived from industrial hemp, which are reviewed and approved by DHHS and meet the definition of hemp products permitted by the 2018 Farm Bill, and is licensed and registered with DHHS to sell such products in the state of Iowa.

30.     TCI Enterprise, Inc. d/b/a Sky High ("Sky High") is an Iowa corporation with a principal place of business in Cedar Falls, Iowa. Sky High manufactures, distributes, and sells a variety of consumable hemp products containing CBD and THC derived from industrial hemp, which are reviewed and approved by DHHS and meet the definition of hemp products permitted by the 2018 Farm Bill, and is licensed and registered with DHHS to sell and manufacture such products in the state of Iowa.

31.     Plaintiff Your CBD Stores Franchising, LLC ("Your CBD Franchising") is a Florida limited liability company with a principal place of business in Palmetto, Florida.  Your CBD Franchising is a franchisor for Sunmed™ products and is the supplier of products for Plaintiff Your CBD Store and other Your CBD Stores in Iowa.

32.     Icanna, LLC ("Icanna") is an Iowa limited liability company with a principal place of business in Ames, Iowa. Icanna sells a variety of consumable hemp products containing CBD and THC derived from industrial hemp, which are reviewed and approved by DHHS and meet the definition of hemp products permitted by the 2018 Farm Bill. Icanna is licensed and registered with DHHS to sell such products in Iowa.

33.     Plaintiffs do a substantial portion of their business with out-of-state entities and individuals, including suppliers, manufacturers and end-user customers.

34.     Defendant Governor Kim Reynolds is the Governor of Iowa, signed the Hemp Amendments into law, oversees the Executive Branch, and is sued in her official capacity only.

35.     Defendant Garcia is the Director of Iowa Department of Health and Human Services, which is responsible for implementation of H.F. 2605. Garcia is sued in her official capacity only.

36.     Defendant Bayes is the Commissioner of the Iowa Department of Public Safety, which is required to cooperate with DHHS in the enforcement of certain provisions contained in H.F. 2605. Bayes is sued in his official capacity only.

37.     Defendant Naig is the Secretary of the Iowa Department of Agriculture and Land Stewardship, which may promulgate regulations to administer and enforce Chapter 204A as included in H.F. 2641. Defendant Naig is sued in his official capacity only.

### THE 2018 FARM BILL

38.     Under the Controlled Substance Act ("CSA"), "marijuana" (or "marihuana") includes all parts of the plant species Cannabis sativa L., whether growing or not, including "the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin. 21 U.S.C. § 802(16)(a).

39.     The CSA expressly excludes "hemp" from the definition of marijuana. "Hemp" is defined by the 2018 Agriculture Improvement Act (the "2018 Farm Bill"), Pub. L. 115-334, 132 Stat. 4490 and codified under 7 U.S.C. § 1639o, as "the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." While hemp is derived from the same plant species as marijuana, the CSA excludes hemp and its derivatives from the definition of marijuana and, thus, marijuana's Schedule I[1] controlled substance restrictions so long as the plant contains less than 0.3% THC concentration.

---

[1] On May 16, 2024, the U.S. Justice Department "announced that the Attorney General has submitted to the Federal Register a notice of proposed rulemaking initiating a formal rulemaking process to consider moving marijuana from a schedule I to schedule III drug under the Controlled Substances Act (CSA)." (https://www.justice.gov/opa/pr/justice-department-submits-proposed-regulation-reschedule-marijuana)

40.     In passing the 2018 Farm Bill, Congress legalized the production of hemp and hemp-derived products. Pub. L. 115-334, 132 Stat. 4490.

41.     Cannabis or cannabis-derived products that contain more than 0.3 percent delta-9 THC remain illegal at the federal level and are considered marijuana. The only federal statutory metric for distinguishing controlled marijuana from legal hemp is the delta-9 THC concentration.

42.     The 2018 Farm Bill's definition of hemp extends beyond the plant itself to "all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers…" Thus, the federal definition of hemp is applicable to all products that (1) are sourced from the cannabis plant, (2) contain no more than 0.3 percent delta-9 THC, and (3) are a derivative, extract, cannabinoid, or one of the other enumerated terms.

43.     The definition of hemp contained in the 2018 Farm Bill is broad, and it does not make any distinction based on the manufacturing method used in making the hemp product or its intended use (*e.g.,* inhalation). The 2018 Farm Bill also does not prescribe how much THC (so long as it is less than 0.3 percent delta-9 THC on a dry weight basis) may be contained in a serving size or container of hemp product. Nor does it prescribe a label or notice that must be placed on these products in order for the hemp products to be sold.

44.     Under the 2018 Farm Bill, "a State or Indian tribe desiring to have primary regulatory authority over the production of hemp in the State or territory shall submit to the Secretary [of Agriculture] …a plan under which the State or Indian tribe monitors and regulates that production..." 7 U.S.C. § 1639*q*(a)(1). The State or Tribal plan concerns the production and testing of cannabis plants and must be approved by the federal government agency that oversees the production of hemp, the United States Department of Agriculture ("USDA"). A true and

accurate copy of Iowa's State Plan dated February 24, 2020 and approved by the USDA on or about March 20, 2020 is attached here to as Exhibit C to this Complaint.

45.     The 2018 Farm Bill does not preempt or limit a State or Indian tribe law that (1) "regulates the production of hemp," *and* (2) "is more stringent than this subchapter." 7 U.S.C. § 1639*p*(a)(3) (*emphasis added*).

46.     "Produce" is defined by the United States Department of Agriculture (the "USDA") as: "To grow hemp plants for market, or for cultivation for market, in the United States." 7 C.F.R. § 990.1.

47.     The 2018 Farm Bill contains an express preemption clause regarding the interstate transportation of hemp that complies with the 2018 Farm Bill's definition of hemp. It states, "No State or Indian Tribe shall prohibit the transportation or shipment of hemp or hemp products produced in accordance with subtitle G of the Agricultural Marketing Act of 1946 [7 U.S.C. 1639*o* et seq.] (as added by section 10113) through the State or the territory of the Indian Tribe, as applicable." 7 U.S.C. § 1639*o* note (b). Subtitle G of the Marketing Act of 1946 consists of the provisions added by the 2018 Farm Bill regarding hemp production, including the definition of hemp.

## HEMP IN IOWA FOLLOWING FEDERAL LEGALIZATION

48.     In 2019, following the federal legalization of hemp and hemp-derived products in 2018, Defendant Reynolds and the State of Iowa passed the Iowa Hemp Act. (S.F. 599) (2019). The Iowa Hemp Act removed hemp and hemp products from schedule I of controlled substances that are set forth in Chapter 124 and legalized the production and sale of hemp products.

49.     S.F. 599 (2019) defined "produce" as "to provide for the planting, raising, cultivating, managing, harvesting, and storing a crop." I.C.A. § 204.2(15).

50.    On June 17, 2020, a second hemp bill was signed by Defendant Reynolds and provided for the legalization and regulation of "consumable hemp product[s]." H.F. 2581 (2020) (the "2020 Iowa Hemp Bill"). The 2020 Iowa Hemp Bill defined "Consumable Hemp Product" as a product that could be consumed through digestion, internal absorption, or absorption through the skin, required persons manufacturing or selling consumable hemp products in Iowa to register with the state, and required compliance with packaging and labeling requirements. *Id.*

51.    The 2020 Iowa Hemp Bill provided further for hemp production license requirements and required inspections, testing and certificates of analysis regarding the hemp products. The 2020 Iowa Hemp Bill broadly defined "Consumable Hemp Product" as "a hemp product that includes a substance that is metabolized or is otherwise subject to a biotransformative process when introduced into the human body." *See* ICA § 204.2(2). Section 204.2(2) included further language addressing what is a consumable hemp product:

a. A consumable hemp product may be introduced into the human body by ingestion or absorption by any device including but not limited to an electronic device.
b. A consumable hemp product may exist in a solid or liquid state.
c. A hemp product is deemed to be a consumable hemp product if it is any of the following:
(1) Designed by the processor, including the manufacturer, to be introduced into the human body.
(2) Advertised as an item to be introduced into the human body.
(3) Distributed, exported, or imported for sale or distribution to be introduced into the human body.
d. "Consumable hemp product" includes but is not limited to any of the following:
(1) A noncombustible form of hemp that may be digested, such as food; internally absorbed, such as chew or snuff; or absorbed through the skin, such as a topical application.
(2) Hemp processed or otherwise manufactured, marketed, sold, or distributed as food, a food additive, a dietary supplement, or a drug.

52.    The hemp, hemp products, and Consumable Hemp Products market in Iowa that had operated smoothly for four years is now facing eradication, or at the very least, is facing a

nearly insurmountable hurdle after the Governor signed the Hemp Amendments into law on May 17, 2024.

53.     The Hemp Amendments expand Iowa's regulatory apparatus regarding hemp, hemp products, and Consumable Hemp Products by impermissibly restricting the definition of hemp, by recriminalizing certain hemp-derived cannabinoid products through a series of new requirements, and by criminalizing the possession, transport, sale, and use of noncompliant Consumable Hemp Products.

***House File 2605***

54.     H.F. 2605 narrows the definition of a Consumable Hemp Product as follows: "the maximum THC concentration be less than or equal to the lesser of the following: (a) Three-tenths of one percent on a dry weight basis, (b) Four milligrams per serving and ten milligrams per container on a dry weight basis." H.F. 2605 § 2.

55.     H.F. 2605 furthermore restricts what can be a "Consumable Hemp Product" in that it prohibits the use, market, or distribution of raw or dried flower form of hemp for purposes of inhalation and prohibits the manufacture, production, distribution, or sale of a "synthetic consumable hemp product."

56.     "Synthetic consumable hemp product" is not defined in the Hemp Amendments or elsewhere in Iowa law, nor is such distinction or definition provided under federal law regarding the method of production with the 2018 Farm Bill. The Hemp Amendments delegate the task of defining "synthetic consumable hemp product" to DHHS.

57.     H.F. 2605 requires that "[e]ach container storing consumable hemp shall be affixed with a notice advising consumers regarding the risks associated with its use." H.F. 2605 § 4. Again,

14

the Hemp Amendments delegate the task of specifying the exact language that must be contained in such notices to DHHS.

58.     DHHS published proposed rules implementing H.F. 2605 on June 12, 2024 (the "Draft Regulations"). DHHS has stated that these Draft Regulations will not be promulgated until at least July 17, 2024 and are subject to change following the time period specified for public comment and hearing, which are currently set for July 2 and July 8. Meanwhile, H.F. 2605 will go into effect on July 1, 2024 with no final regulations having been promulgated, or even drafted.

59.     H.F. 2605 also adds multiple civil and criminal penalties for the violation of provisions contained within the Iowa Hemp Act. *See e.g.*, H.F. 2605 §§ 10-13. For example, as of July 1, 2024, "[a] person engaged in the retail sale of an item advertised as a Consumable Hemp Product that is not a Consumable Hemp Product commits a serious misdemeanor." *Id.* at § 11.

60.     H.F. 2605 gives DHHS the authority to "order the confiscation and disposal of a hemp product" if the product (a) is falsely advertised, sold, or distributed as a consumable hemp product; (b) exceeds the maximum THC concentration allowed under chapter 204.7, and (c) is a consumable hemp product manufactured, sold, or distributed by a person who is not registered with DHHS. H.F. 2605 § 15.

61.     Upon signing H.F. 2605 into law, the Governor stated that she was "signing it into law to protect minors from dangerous and intoxicating products." Gov. Reynolds Signs Final Bills into Law (May 17, 2024) https://governor.iowa.gov/press-release/2024-05-17/gov-reynolds-signs-final-bills-law.

62.     However, the history of H.F. 2605 illustrates that the legislators were primarily concerned with protecting Iowa's existing medical cannabis program.  For example, Sen. Dawson stated, "We have a medical [cannabis] program that is growing and over 18,000 Iowans use that.

And that program starts at 4.5 milligram THC usage. The Iowa Hemp Act … needs to be at a milligram usage less than our medical [cannabis] program, otherwise the lines are blurred. And the biggest distinction is that the medical [cannabis] program actually puts an individual with a doctor to get these products. That's the biggest distinction. The Iowa Hemp program has none of those barriers there. So, if we want to protect Iowans with these products … there has to be some type of guardrails on here to make sure that the medical [cannabis] program is the program that we can direct Iowans to when they have one of these diagnosed conditions..." Iowa Senate Video 2024-04-02, *HF 2605* (12:42:20 PM to 12:43:56 PM) https://www.legis.iowa.gov/dashboard?view=video&chamber=S&clip=s20240402114759428&offset=3258&bill=HF%202605&dt=2024-04-02&ga=90 (last visited June 24, 2024).

63.    DHHS has acknowledged that it "will have limited means to prohibit online sales in Iowa or authority in other states." Iowa's Medical Cannabis Program. https://hhs.iowa.gov/media/13478/download?inline= (last accessed June 23, 2024).

### House File 2641

64.    H.F. 2641 primarily implements new requirements regarding the production (*i.e.,* growing) of hemp, which will be contained in Chapter 204A. H.F. 2641 grants DALS the authority to administer and enforce the provisions of Chapter 204A and requires those rules to comply with federal law and regulations.

65.    H.F. 2641 creates a criminal offense involving hemp including production, use, harvest, transportation, delivery, distribution, or sale of cannabis as a controlled substance unless compliant with Chapter 204A and Chapter 204.

66.     H.F. 2641 also eliminates the production and testing requirements previously included in the Iowa 2020 Hemp Bill, and subjects a person transporting hemp seed or harvested hemp in Iowa to various "public safety requirements:"

> 1. If the person is licensed under 7 C.F.R. ch. 990, subpt. B or C, the person must carry a copy of that license.
> 2. The person must carry a certificate of analysis.
> 3. The person must carry a bill of lading under all of the following circumstances:
>> a. The person is in possession of the hemp in transit to transfer ownership.
>> b. The person is delivering cannabis seed for planting and the seed is not of the licensee's own production.
>> c. A person brings hemp produced in another state into or through this state.

H.F. 2641 § 42.

67.     To date, DALS has not promulgated any final rules or published draft rules regarding the changes made in H.F. 2641.

### *Criminal Penalties*

68.     Iowa law defines "marijuana" as "all parts of the plants of the genus Cannabis, whether growing or not; the seeds thereof; the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture or preparation of the plant, its seeds or resin, including tetrahydrocannabinols." I.C.A. § 124.101(20).

69.     Marijuana is a schedule I controlled substance, as is THC. I.C.A. § 124.204(4)(m), (u). Iowa law excludes from the definition of marijuana and THC as controlled substances hemp and hemp products. I.C.A. § 124.204(7).

70.     I.C.A. § 124.204(7) excludes as schedule I controlled substances: "(a) Hemp as defined in section 204.2 that is or was produced in this state, or was produced in another state, in accordance with the provisions of chapter 204 with a maximum delta-9 tetrahydrocannabinol concentration that does not exceed three-tenths of one percent on a dry weight basis;" and (b) "A hemp product as provided in chapter 204 with a maximum tetrahydrocannabinol concentration,

inclusive of any isomers, derivatives, and analogs, whether naturally occurring or synthesized, that does not exceed three-tenths of one percent on a dry weight basis." The definition is a near copy of the definition contained in the 2018 Farm Bill.

71.     Only a consumable hemp product that is manufactured, sold, or consumed in compliance with I.C.A. § 204.7 is considered not to be a controlled substance under I.C.A. chapter 124 or 453B. I.C.A. § 204.7(8)(f). Said another way, consumable hemp products that are not manufactured, sold, or consumed in compliance with Chapter 204 will be classified as schedule I controlled substances.

72.     DHHS's understanding of the Hemp Amendments is consistent with the above, as DHHS said in a guidance document it published, "Products which contain tetrahydrocannabinols and do not conform with Iowa's Consumable Hemp law are 'controlled substances' pursuant to Iowa Code sections 124.101(20), 124.202, and 124.204(4)(m). Those possessing, manufacturing, or distributing controlled substances in Iowa may be criminally prosecuted." *Consumable Hemp: HF 2605 FW – What it Means, Draft Rules, Townhall Info*, June 2024, https://hhs.iowa.gov/media/13506/download?inline= (last accessed June 23, 2024).

**IMMEDIATE IMPACT OF THE HEMP AMENDMENTS ON THE PLAINTIFFS**

73.     The Plaintiffs have been lawfully engaged in the production, manufacturing, distribution, and/or retail sale of hemp and consumable hemp products in and out of Iowa under both Iowa and federal law.

74.     Several of the Plaintiffs are Iowa retailers of consumable hemp products that will be prohibited beginning July 1, 2024. Seventy-five percent or more of the retailer Plaintiffs' current inventory will consist of consumable hemp products that are currently compliant with Iowa and federal law but will not comply with the Hemp Amendments.

75.    Several retailer Plaintiffs sell "full spectrum" cannabidiol ("CBD") products. Cannabidiol is another substance that is derived from the cannabis plant. Full spectrum CBD products have trace elements of delta-9 THC and fall under the definition of "hemp" or hemp products in the 2018 Farm Bill because they are derived from cannabis plants, and they contain less than 0.3 percent delta-9 THC concentration on a dry weight basis.

76.    Full spectrum products sold by many retailer Plaintiffs do not have an intoxicating or psychoactive component because the CBD counteracts or dilutes the trace delta-9 THC elements. Despite having just trace levels of delta-9 THC concentration, the full spectrum CBD products sold by retailer Plaintiffs will not meet the definition of a consumable hemp product under H.F. 2605's new definition. While these products meet the federal definition because the delta-9 THC concentration is less than 0.3 percent on a dry weight scale, this alone is insufficient to satisfy the new Iowa definition of "consumable hemp product." The product must have a maximum THC concentration of less than or equal to the lesser of the following: (a) 0.3 percent on a dry weight basis, or (b) four milligrams per serving and ten milligrams per container on a dry weight basis. H.F. 2605 § 2.

77.    Based on the language of H.F. 2605 and guidance issued by DHHS, retailer Plaintiffs believe that the full spectrum CBD products they sell in Iowa will not comply with the serving and container limitations. The 2018 Farm Bill requirement that products only contain 0.3 percent delta-9 THC concentration on a dry weight basis does not require producers to establish a set dosage in each product. For example, a product could legally contain upwards of 81mg of THC for a CBD oil product if two droppers of the product (i.e. a serving) only contain 0.27mg of THC to abide by the THC concentration requirement. Now that the Hemp Amendments set a dosage

and threshold requirement for the entire product, nearly all (if not all) full-spectrum products on the Iowa market – and likely the entire nationwide market – will not be compliant.

78.    However, that same CBD oil product could be sold in Iowa under the Hemp Amendments merely if it is repackaged into de minimis serving size containers to decrease the total milligrams of THC to 10 per container.   The Hemp Amendments contain no purchase limitations either, so an individual could purchase 8 bottles of the product at a time to make up what currently is marketed as a single bottle.

79.    Up to 85 percent of the consumable hemp products that Plaintiff HW sells are full spectrum CBD products, which will not meet the requirements for consumable hemp products contained in the Hemp Amendments as of July 1. HW estimates a total loss of $171,000 given the restrictions implemented in the Hemp Amendments. Furthermore, due to the uncertainty about what language must be included in the warning label and what a prohibited "synthetic consumable hemp product" is, HW is uncertain as to what, if any, remaining products it can sell as of July 1, 2024.

80.    Plaintiff A.J.'s Health and Wellness sells a variety of full spectrum CBD products and consumable hemp products that otherwise exceed the container and size limitations that will be prohibited when the Hemp Amendments go into effect. It has already had to close one store because of the impending changes to the Iowa Hemp Law. If H.F. 2605 takes effect, AJ's Health and Wellness will be forced to close its remaining  locations in Iowa.

81.    Plaintiff Beyond CBD will only be able to sell 10% of its consumable hemp products it currently has as of July 1 because of the serving size, container and notice requirements. One of its beverage vendors will not change its product to be compliant with the Hemp Amendments. Beyond CBD anticipates a total loss of revenue due to the Hemp Amendments to

be at least $194,195. For any remaining product that might comply with the Hemp Amendments, Beyond CBD is unsure what warning language will be required to be affixed to all consumable hemp containers or whether any of its products will be considered "synthetic consumable hemp products."

82.     Only 50% of Plaintiff Campbell's CBD products will be legal as of July 1, 2024 because of the serving size, container and notice requirements. Campbell's estimates that it will lose at least $50,000 in revenue per month without CBD sales. For any remaining product that might comply with the Hemp Amendments, Campbell's is unsure what warning language will be required to be affixed to all consumable hemp containers or whether any of its products will be considered "synthetic consumable hemp products."

83.     Plaintiff Your CBD Store specializes in CBD products, and the majority of consumable hemp products it sells are full spectrum CBD products. At least 75% of Your CBD Store's products that are currently offered for sale will not comply with the Hemp Amendments because of the new serving size and container requirements. For the remaining 25% of its products, Your CBD is unsure how they can be sold as of July 1, 2024 given the uncertainty regarding what language is required in the warning label affixed to every consumable hemp product container or whether its products are prohibited "synthetic consumable hemp products."

84.     All consumable hemp products that Plaintiff Sky High manufactures, distributes, and sells contain 10 milligrams of THC per serving. These products, which are federally legal and legal under current Iowa law, will all be prohibited as of July 1, 2024.

85.     At least one of the Plaintiffs, Sky High, is manufacturer and a wholesale distributor of hemp-derived products that will be prohibited by the Hemp Amendments as of July 1, 2024. Sky High manufactures its consumable hemp products in Wisconsin and distributes its products

primarily to Iowa businesses. However, Sky High now will be forced to transport, store, and sell its product outside of Iowa or destroy the products and will be prohibited from even transporting its manufactured consumable hemp products through Iowa. Sky High will no longer be able to engage in a substantial part of its distribution business because its ability to sell or transport its products through Iowa is impaired by the Hemp Amendments' criminalization of the products, and because Iowa retailers cannot sell its products as of July 1, 2024.

86.     At least one of the Plaintiffs, Greene Goods, is a hemp farmer and retailer. Greene Goods is a seasonal greenhouse and its CBD sales help keep positive cash flow year-round. Greene Goods will have to comply not only with H.F. 2605's requirements regarding Consumable Hemp Products, but also H.F. 2641's new requirements regarding the production of hemp. Greene Goods sends its raw hemp flower to Wisconsin and Minnesota for extraction, then such products are sent back to Greene Goods for sale at its Iowa retail business. Eighty-five percent of the products that Greene Goods currently sells will not comply with the serving and container size requirements in H.F. 2605. Greene Goods is unsure whether it can even sell the remaining 15% of its products given the uncertainty regarding what warning label must be placed on every consumable hemp product container, and the uncertainty about whether any of its products will be considered "synthetic consumable hemp products." The interstate nature of Greene Goods' business is also in jeopardy given the restrictions on interstate transportation contained in H.F. 2605 and H.F. 2641.

87.     All of the Plaintiffs are licensed with DHHS, currently comply with the Iowa Hemp Act (Chapter 204) and comply with federal law regarding hemp and consumable hemp products.

88.     Defendants, acting under color of state law, have committed, and will continue to commit, multiple constitutional torts against Plaintiffs, including by violating Plaintiffs' rights under the United States Constitution.

**FIRST CAUSE OF ACTION**

**EXPRESS PREEMPTION BY THE 2018 FARM BILL (42 U.S.C. § 1983)**

**(Declaratory and Injunctive Relief)**

89.     Plaintiffs incorporate the allegations contained in Paragraphs 1 through 88 as if realleged in this paragraph.

90.     Defendants, acting under color of state law, have committed, and will continue to commit, multiple constitutional torts against Plaintiffs, including by violating Plaintiffs' rights under the Supremacy Clause of the United States Constitution and the Agricultural Improvement Act of 2018 ("The 2018 Farm Bill").

91.     Application of the Hemp Amendments and prospective regulations to Plaintiffs violates the Supremacy Clause at Article VI, Clause 2 of the United States Constitution.

92.     The Supremacy Clause of the United States Constitution provides that the laws of Congress are the "Supreme Law of the Land." A state may not enact a statute that conflicts with a federal law. A state law conflicts with federal law and thus is preempted when it is not possible for an individual to comply with both state and federal law.

93.     The 2018 Farm Bill defines "hemp" as: "the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis."

94.     The 2018 Farm Bill has an express preemption clause, which states: "No State or Indian Tribe shall prohibit the transportation or shipment of hemp or hemp products produced in accordance with subtitle G of the Agricultural Marketing Act of 1946…through the state or the territory of the Indian Tribe, as applicable." Pub. L. 115-334, § 10114, codified as 7 U.S.C. § 1639*o* note (b).

95.     H.F. 2605 is in direct contravention of the 2018 Farm Bill in that it criminalizes the possession—and thus prohibits the transportation and shipment—of hemp products that do not meet the new requirements.

96.     H.F. 2605 interferes with the free flow of interstate transportation and shipment of hemp and Consumable Hemp Products because a person in possession of noncompliant consumable hemp product within the state of Iowa who is engaged in the transportation or shipment of that product is subject to prosecution.

97.     H.F. 2605 does not provide any effective exception to its criminal prohibitions for the interstate transportation and shipment of consumable hemp products that do not comply with the new requirements.

98.     H.F. 2641 is also in direct contravention to the 2018 Farm Bill's express preemption clause regarding interstate transportation or shipment of hemp and hemp products. For the interstate transportation of harvested hemp or hemp seed, H.F. 2641 requires the person carry a license (if applicable), a certificate of analysis, and a bill of lading if the person is in possession to transfer ownership, if the person is delivering cannabis seed for planting and the person did not produce the seed, and if the person brings hemp produced in another state into or through Iowa. These requirements block, limit, or interfere with the interstate transportation or shipment of hemp that is protected by the 2018 Farm Bill and within the scope of the express preemption clause.

99.     H.F. 2641 does not provide any effective exception to its criminal prohibitions and interference of interstate shipment of hemp and hemp products that do not comply with the Hemp Amendments.

100.    The effect of the Hemp Amendments is that interstate transportation and shipment of hemp products that are produced and manufactured in accordance with federal law is prohibited in and throughout the State of Iowa.

101.    Plaintiffs who operate retail stores within Iowa that sell consumable hemp products that are authorized by the State of Iowa receive the majority of their products from outside the State of Iowa through various suppliers or manufacturers.

102.    The Hemp Amendments will prohibit the interstate shipment into the State of Iowa of any consumable hemp product that does not meet the serving size and container requirements identified in H.F. 2605.

103.    The Hemp Amendments will also prohibit the interstate shipment into the State of Iowa, and subsequent sale by Plaintiffs, of any consumable hemp products that are considered "synthetic."

104.    Plaintiffs also sell consumable hemp products online to end-consumers who are outside the State of Iowa.

105.    There is no exception within the Hemp Amendments to allow Plaintiffs or others who sell consumable hemp products that meet the federal requirements under the 2018 Farm Bill to ship products outside the State of Iowa to out-of-state consumers.

106.    Plaintiffs are therefore entitled to a judgment declaring that the 2018 Farm Bill preempts the Hemp Amendments as applied to the failure to comply with the 2018 Farm Bill's preemption clause regarding interstate transportation of hemp.

107.    Such declaration is necessary and appropriate at this time to determine the rights and obligations of the parties.

108.    Because the Defendants' actions cause harm that cannot be adequately compensated in damages, Plaintiffs request the Court issue temporary, preliminary, and permanent injunctive relief enjoining the Defendants from enforcing the Hemp Amendments and any regulations promulgated thereunder.

## SECOND CAUSE OF ACTION

## CONFLICT PREEMPTION BY THE 2018 FARM BILL (42 U.S.C. § 1983)

### (Declaratory and Injunctive Relief)

109.    Plaintiffs incorporate the allegations contained in Paragraphs 1 through 108 as if realleged in this paragraph.

110.    Defendants, acting under color of state law, have committed, and will continue to commit, multiple constitutional torts against Plaintiffs, including by violating Plaintiffs' rights under the Supremacy Clause of the United States Constitution and the Agricultural Improvement Act of 2018.

111.    Application of the Hemp Amendments and prospective regulations against Plaintiffs and those similarly situated violates the Supremacy Clause at Article VI, Clause 2 of the United States Constitution.

112.    The Supremacy Clause of the United States Constitution provides that the laws of Congress are the "Supreme Law of the Land." A state may not enact a statute that conflicts with a federal law. A state law conflicts with federal law and thus is preempted when it is not possible for an individual to comply with both state and federal law.

113.    The federal government of the United States has a critical interest in overseeing the hemp market throughout the Nation. In response to this critical interest, Congress enacted the 2018 Farm Bill, which legalized and de-scheduled hemp and hemp products only if they meet the

26

definition provided for by Congress.

114.    Under the 2018 Farm Bill, hemp and hemp products are legal if they met the following definition: "the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydro-cannabinol concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639*o*(1).

115.    The 2018 Farm Bill did not prescribe how much THC may be contained in a serving size or container on a dry weight basis for a hemp product and what labels must be affixed to such products, nor does it make any distinction based on the way in which the hemp was manufactured, whether hemp or hemp products contain any "synthetic" substance, or whether the hemp products may be used for inhalation.

116.    H.F. 2605 is a statute that concerns  the regulation of hemp, just as the 2018 Farm Bill does, but H.F. 2605 limits the definition of hemp by, at minimum, (1) prohibiting "synthetic consumable hemp products," (2) prohibiting raw or dried flower forms of hemp for purposes of inhalation; (3) subjecting consumable hemp products to dosage and threshold serving and container requirements, which effectively decreases the threshold of THC per serving in contradiction to the 2018 Farm Bill; and (4) requiring a specific notice to be affixed for the product to be compliant. The Hemp Amendments recriminalize hemp and consumable hemp products that do not meet the requirements of chapter 204 and 204A, and such products will be classified as "controlled substances" subjecting those who manufacture, distribute, retail, or possess such products to criminal prosecution.

117.    The criminalization of consumable hemp products, pursuant to a definition that is narrower than the federal definition, serves as an obstacle to the full purposes and objectives of Congress in passing the 2018 Farm Bill.

118.    The only way to distinguish controlled marijuana from legal hemp is the delta-9 THC concentration level.

119.    The 2018 Farm Bill's definition of hemp extends beyond the hemp plant including but not limited to all derivates, extracts, and cannabinoids. This definition encapsulates downstream products and substances so long as the delta-9 THC concentration does not exceed 0.3 percent on a dry weight basis.

120.    The 2018 Farm Bill's definition of hemp has guided the Plaintiffs in the products that they offer for sale within Iowa and also outside of Iowa to out-of-state consumers.

121.    Plaintiffs have obtained licenses as Consumable Hemp Retailers authorized by the State of Iowa Department of Health and Human Services pursuant to Chapter 204 of the Iowa Code.

122.    Plaintiffs are therefore entitled to a judgment declaring that the 2018 Farm Bill preempts the Hemp Amendments as applied to the failure to comply with the 2018 Farm Bill's definition of hemp.

123.    Such declaration is necessary and appropriate at this time to determine the rights and obligations of the parties.

124.    Because the Defendants' actions cause harm that cannot be adequately compensated in damages, Plaintiffs request the Court issue temporary, preliminary, and permanent injunctive relief enjoining the Defendants from enforcing the Hemp Amendments and any regulations promulgated thereunder.

**THIRD CAUSE OF ACTION**

**VIOLATION OF THE DUE PROCESS CLAUSE (42 U.S.C. § 1983)**

**(Facial Challenge)**

125.     Plaintiffs incorporate the allegations contained in Paragraphs 1 through 124 as if realleged in this paragraph.

126.     Defendants, acting under color of state law, have committed, and will continue to commit, multiple constitutional torts against Plaintiffs, including by violating Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

127.     The Hemp Amendments criminalize the possession, manufacture, and distribution of hemp and consumable hemp products that are not compliant with the Hemp Amendments.

128.     The Hemp Amendments violate the Due Process Clause because they are unconstitutionally vague on their face.

129.     The Hemp Amendments require that "[e]ach container storing consumable hemp shall be affixed with a notice advising consumers regarding the risks associated with its use." H.F. 2605 § 4. The Hemp Amendments prohibit the manufacture, production, distribution, marketing, or sale of a consumable hemp product that does not meet the packaging and labeling requirements. H.F. 2605 § 4.

130.     DHHS is required to adopt rules regarding the language of the required notice and its display on the container. *Id.*

131.     The Hemp Amendments are vague on their face, as there is no definition or explanation regarding what must be contained in the notice as required by the Hemp Amendments. And while DHHS has published proposed regulations regarding such notice, the regulations will not be in effect until after the Hemp Amendments (and their criminal prohibitions) go into effect.

132.     Because the Hemp Amendments fail to state what must be contained in a "notice advising consumers regarding the risks associated with its use," and no regulations have been promulgated defining such terminology, no reasonable person of ordinary intelligence is able to discern the notice they must place on their products and what packaging and labeling requirements are required in order for the product to be compliant with the laws and avoid criminal penalties beginning on July 1, 2024.

133.     This vagueness also results in the failure to establish standards for police and public that are sufficient to guard against the arbitrary deprivation of liberty.

134.     The Hemp Amendments also prohibit the manufacture, production, distribution, marketing, and sale of a "synthetic consumable hemp product as defined by the rules adopted by [DHHS]."

135.     The Hemp Amendments are vague on their face regarding this prohibition concerning synthetic hemp products, as nowhere in the Hemp Amendments, or otherwise in chapters 204 or 204A, is "synthetic consumable hemp product defined."

136.     DHHS is required to adopt rules defining synthetic hemp, and while DHHS has published proposed regulations regarding such notice, the regulations will not be in effect until after the Hemp Amendments (and their criminal prohibitions) go into effect.

137.     No ordinary person of reasonable intelligence will be able to determine what a prohibited "synthetic consumable hemp product" is.

138.     The Hemp Amendments' failure to define material words and terminology renders the Hemp Amendments vague on their face.

139.     The Hemp Amendments' failure to define the specifications of the required notice renders the Hemp Amendments vague on their face.

140. Because the Hemp Amendments fail to define material words and terminology and fail to provide specifications for compliance with the notice requirement, consumable hemp product producers, manufacturers, distributors, and retailers are unable to discern whether their products will be considered non-compliant and therefore whether they are criminally sanctionable. Further, consumable hemp product producers, manufacturers, distributors, and retailers are unable to discern how to make their products comply with the notice requirement.

141. The lack of promulgated regulations, which are integral to compliance with the Hemp Amendments, compounds the vagueness of the Hemp Amendments.

142. The Hemp Amendments' failure to define material words, terminology, and failure to include specifications for the required notice is insufficiently definite such that it will lead to arbitrary and discriminatory enforcement and subject Plaintiffs to immediate criminal penalties and potential imprisonment. In other words, the Hemp Amendments fail to provide explicit standards for enforcement sufficient to guard against the arbitrary deprivation of liberty interests.

143. Persons in violation of the Hemp Amendments and the 2020 Iowa Hemp Bill (or the current Iowa Hemp Act) are subject to civil penalties including the confiscation and forced disposal of non-compliant products, as well as the following criminal penalties for noncompliance with the Hemp Amendments: serious misdemeanors (H.F. 2605 §§ 8, 11) and the criminal penalties provided for regarding the possession of a class I controlled substance in Chapter 124 and Chapter 453B. I.C.A. § 204.7(8).

144. For a statute to be unconstitutional under the Due Process Clause, enforcement is not required. Enforcement must just be imminent or the legal authority to enforce must be available to the authorities. In this instance, enforcement may begin July 1, 2024.

145.    Enforcement in this context would carry the presumption that hemp products that comply with the 2018 Farm Bill do not comply with the Hemp Amendments, that such products can be confiscated and disposed of by DHHS, and that a person who violates the Hemp Amendments could not only be liable for civil penalties, but also criminal penalties and imprisonment related to controlled substances.

146.    Plaintiffs have a constitutional right to liberty to be free from risk of arbitrary enforcement, and associated penalties, of a vague law.

147.    Because the Defendants' actions cause harm that cannot be adequately compensated in damages, Plaintiffs request the Court issue temporary, preliminary, and permanent injunctive relief enjoining the Defendants from enforcing the Hemp Amendments and any regulations promulgated thereunder.

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE DUE PROCESS CLAUSE (42 U.S.C. § 1983)

## (As Applied Challenge)

148.    Plaintiffs incorporate the allegations contained in Paragraphs 1 through 147 as if realleged in this paragraph.

149.    Defendants, acting under color of state law, have committed, and will continue to commit, multiple constitutional torts against Plaintiffs, including by violating Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

150.    The Hemp Amendments criminalize the possession, manufacture, and distribution of hemp and consumable hemp products that are not compliant with the Hemp Amendments.

151.    The Hemp Amendments violate the Due Process Clause because they are unconstitutionally vague in their applications to the Plaintiffs' lawful operation of business

pursuant to the federal 2018 Farm Bill and 2020 Iowa Hemp Bill, or the current Iowa Hemp Act.

152.    The Hemp Amendments require that "[e]ach container storing consumable hemp shall be affixed with a notice advising consumers regarding the risks associated with its use." H.F. 2605 § 4. The Hemp Amendments prohibit the manufacture, production, distribution, marketing, or sale of a consumable hemp product that does not meet the packaging and labeling requirements. H.F. 2605 § 4.

153.    DHHS is required to adopt rules regarding the language of the required notice and its display on the container. *Id.*

154.    The Hemp Amendments delegate to DHHS the task of providing the language that must be included in the required notice, and while DHHS has published proposed regulations regarding such notice, the proposed regulations will not be in effect until after the Hemp Amendments (and their criminal prohibitions) go into effect.

155.    Because the Hemp Amendments fail to state what must be contained in a "notice advising consumers regarding the risks associated with its use," and no regulations have been promulgated defining such terminology, Plaintiffs are unable to discern the notice they must place on their products and what packaging and labeling requirements are required in order for the product to be compliant with the laws and avoid criminal penalties beginning on July 1, 2024.  As such, the Hemp Amendments violate Plaintiffs' Due Process rights as applied to their particular conduct of selling consumable hemp products within Iowa.

156.    The Hemp Amendments also prohibit the manufacture, production, distribution, marketing, and sale of a "synthetic consumable hemp product as defined by the rules adopted by [DHHS]."

157.    The Hemp Amendments delegate the task of defining a "synthetic consumable hemp product" to DHHS.

158.    DHHS is required to adopt rules defining "synthetic consumable hemp product," and while DHHS has published proposed regulations regarding such notice, the regulations will not be in effect until after the Hemp Amendments (and their criminal prohibitions) go into effect.

159.    Because the Hemp Amendments fail to define what a "synthetic consumable hemp product is," and no regulations have been promulgated defining such terminology, Plaintiffs are unable to discern whether their products are "synthetic" in order for the product to be compliant with the laws and avoid criminal penalties beginning on July 1, 2024.   As such, the Hemp Amendments violate Plaintiffs' Due Process rights as applied to their particular conduct of selling consumable hemp products within Iowa.

160.    The Hemp Amendments' failure to define material words and terminology renders the Hemp Amendments unconstitutional as applied to the Plaintiffs' operations.

161.    The Hemp Amendments' failure to define the specifications of the required notice makes the Hemp Amendments unconstitutional as applied to the Plaintiffs' operations.

162.    The lack of promulgated regulations, which are integral to compliance with the Hemp Amendments, compounds the vagueness of the Hemp Amendments and again, leaves Plaintiffs questioning what conduct is in fact criminalized and/or how to comply with the law.

163.    The Hemp Amendments' failure to define material words, terminology, and failure to include specifications for the required notice is insufficiently definite such that it will lead to arbitrary and discriminatory enforcement and subject Plaintiffs to immediate criminal penalties and potential imprisonment. In other words, the Hemp Amendments fail to provide explicit standards for enforcement and are therefore vague as applied to Plaintiffs.

164.     Plaintiffs are subject to civil penalties including the confiscation and forced disposal of non-compliant products.

165.     Plaintiffs are subject to the following criminal penalties for non-compliance with the Hemp Amendments: serious misdemeanors (*e.g.,* H.F. 2605 §§ 9, 11) and the criminal penalties provided for in Chapter 124 regarding the possession of a class I controlled substance and in Chapter 453B. I.C.A. § 204.7(8)(f).

166.     For a statute to be unconstitutional under the Due Process Clause, enforcement is not required. Enforcement must just be imminent or the legal authority to enforce must be available to the authorities. In this instance, enforcement may begin July 1, 2024.

167.     Enforcement in this context would carry the presumption that hemp products that comply with the 2018 Farm Bill do not comply with the Hemp Amendments, that such products can be confiscated and disposed of by DHHS, and that a person who violates the Hemp Amendments could not only be liable for civil penalties, but also criminal penalties and imprisonment related to controlled substances.

168.     Enforcement in this context would criminalize the possession, sale and distribution of consumable hemp products that were legal under the 2018 Farm Bill and subject those products to an immediate embargo by the State of Iowa without providing notice and an opportunity to be heard.

169.     The absence of legal sell-through for existing products is a violation of the Due Process Clause as applied to Plaintiffs.

170.     Plaintiffs have a constitutional right to liberty to be free from risk of enforcement, and associated penalties, of a vague law.

171.    Because the Defendants' actions cause harm that cannot be adequately compensated in damages, Plaintiffs request the Court issue temporary, preliminary, and permanent injunctive relief enjoining the Defendants from enforcing the Hemp Amendments and any regulations promulgated thereunder.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE COMMERCE CLAUSE (42 U.S.C. § 1983)

## (Declaratory and Injunctive Relief)

172.    Plaintiffs incorporate the allegations contained in Paragraphs 1 through 171 as if realleged in this paragraph.

173.    Defendants, acting under color of state law, have committed, and will continue to commit, multiple constitutional torts against Plaintiffs, including by violating Plaintiffs' rights under the Commerce Clause at Article I, Section 8 of the United States Constitution.

174.    The Hemp Amendments violate the Commerce Clause because they impose disproportionate burdens on hemp producers, manufacturers and retailers of consumable hemp products who engage in interstate commerce through the shipment and sale of consumable hemp products, including in-state consumable hemp product retailers and farmers who ship their hemp and/or products out of state. Such burdens far outweigh any legitimate local benefit that Iowa contends the Acts advance.

175.    The Governor signed the Hemp Amendments on May 17, 2024, which re-criminalizes the possession, transportation, manufacturing, distribution, and sale of hemp and hemp products regardless of whether those products comply with the 2018 Farm Bill's definition of the same.

176.    For example, the 2018 Farm Bill expressly prohibits states from blocking, interfering, or limiting the transportation or shipment of hemp and hemp products produced in accordance with the 2018 Farm Bill.

177.    However, H.F. 2605 is in direct contravention of the 2018 Farm Bill in that it criminalizes the possession—and thus the transportation and shipment—of hemp products that do not meet the new requirements. This interferes with the free flow of interstate transportation and shipment of hemp and hemp products because a person in possession of noncompliant hemp product within the state of Iowa who is engaged in the transportation or shipment of that product may be subject to prosecution.

178.    Plaintiffs ship consumable hemp products out-of-state that meet the federal definition of hemp and hemp products under the 2018 Farm Bill but will be prohibited from doing so under the Hemp Amendments.

179.    Plaintiffs also purchase consumable hemp products from out-of-state suppliers that meet the federal definition of hemp and hemp products under the 2018 Farm Bill but will be prohibited from doing so under the Hemp Amendments.

180.    H.F. 2605 does not provide any effective exception to its criminal prohibitions for the interstate transportation and shipment of consumable hemp products that do not comply with the Hemp Amendments.

181.    Additionally, the 2018 Farm Bill mandates that manufacturers outside of the state comply with the labeling requirements and size and container requirements enacted via H.F. 2605. If every state were permitted to enact their own definitions of hemp that differs from the definitions provided by Congress—including mandating that such hemp products conform with labeling and size and container requirements that are not contemplated by the federal law—the flow of interstate

commerce regarding fully legal products under federal law would be significantly burdened. To comply with such a regulatory quagmire, a manufacturer supplying products into Iowa and other states would be required to have potentially 50 different serving sizes, containers, and labels for even just a single product.

182.    This forced adhesion to a single state's moral and policy requirements operate as a substantial, forced burden in order to gain access to the Iowa marketplace.

183.    Nothing in the Hemp Amendments or chapter 204 or 204A provides an effective exception from Iowa's hemp requirements for hemp and hemp products in interstate commerce.

184.    The regulatory scheme created by a single state, Iowa, is controlling other states' access to other markets. Said another way, if farmers, retailers and manufacturers are not compliant with the Hemp Amendments, chapter 204, and chapter 204A, they are penalized not just by the prohibition of selling their products in Iowa, but by being excluded from even transporting their products through Iowa. This further extends the out-of-bounds regulatory nature of commerce, not to mention criminal sanctions on the possession, transportation, use, or distribution of noncompliant hemp or hemp products within the state of Iowa.

185.    Upon signing H.F. 2605 into law, the Governor stated that she was "signing it into law to protect minors from dangerous and intoxicating products." Gov. Reynolds Signs Final Bills into Law (May 17, 2024) https://governor.iowa.gov/press-release/2024-05-17/gov-reynolds-signs-final-bills-law.

186.    If protecting minors were the goal of H.F. 2605, it has accomplished far more than just that. There are alternate measures Iowa could have taken to achieve this task that would be less burdensome on interstate commerce, such as enacting an age limit while keeping existing federal limitations in place.

187.    Indeed, the Plaintiffs already provide as a business policy not to sell consumable hemp products directly to those individuals under the age of 21.

188.    H.F. 2605, as it stands, substantially exceeds this goal by criminalizing non-compliant products, banning "synthetic consumable hemp products," banning raw or dried flower products for the purpose of inhalation, implementing notice requirements, and implementing new serving and container size requirements for all Iowans and hemp producers, manufacturers, distributors, and retails including who are 21 years and older.

189.    These substantial burdens on commerce are clearly excessive and outweigh any local benefit, especially where such local benefit could have been achieved without interfering with interstate commerce.

**SIXTH CAUSE OF ACTION**

**VIOLATION OF THE TAKINGS CLAUSE (42 U.S.C. § 1983)**

**(Declaratory and Injunctive Relief)**

190.    Plaintiffs incorporate the allegations contained in Paragraphs 1 through 189 as if realleged in this paragraph.

191.    Defendants, acting under color of state law, have committed, and will continue to commit, multiple constitutional torts against Plaintiffs, including by violating Plaintiffs' rights under the Takings Clause of the Fifth and Fourteenth Amendment of the Constitution of the United States.

192.    The Hemp Amendments violate the Fifth Amendment and Fourteenth to the United States Constitution because they permit DHHS to engage in a regulatory and/or ordinary taking of the Plaintiffs' property without just compensation. The Fifth Amendment to the United States Constitution states, "nor shall private property be taken for public use, without just compensation."

193.    Plaintiffs have protectable property interests under the Fifth and Fourteenth Amendments in their products and their businesses.

194.    H.F. 2605's key provisions are preempted by federal law, are infirm under the Due Process Clause of the Fourteenth Amendment because behavior is criminalized without adequate notice as to what is actually prohibited and violate the dormant Commerce Clause.

195.    Specifically, for hemp products to be deemed compliant in Iowa, the Hemp Amendments mandate compliance with labeling, notices, and serving size and container size requirements that are not required federally, in addition to the prohibition on "synthetic" products as well as raw flower if intended for inhalation.

196.    H.F. 2605 allows DHHS to confiscate and dispose of hemp products that are "falsely advertised, sold, or distributed as a consumable hemp product," exceed the maximum THC concentration under §124.204(7) or chapter 204, or if the consumable hemp product was sold, distributed, or manufactured by a person who is not registered with DHHS. See H.F. 2605 § 15. The Hemp Amendments do not detail the process by which DHHS may confiscate and dispose of noncompliant products.

197.    Where the government enacts regulations that completely deprive an owner of all or economically beneficial use of their property, such as the Hemp Amendments here, that is considered a regulatory taking.

198.    For some Plaintiffs, such as A.J.'s Health and Wellness, the new prohibitions in the Hemp Amendments will require the cessation of business operations, thus depriving them of *all* economically beneficial use of their property.

199.    All Plaintiffs believe that they will either have to attempt to sell at a substantial loss or dispose of all products they believe will not comply with the Hemp Amendments in order to avoid potential prosecution.

200.    The Hemp Amendments result in an impermissible regulatory taking because they effectively deprive the Plaintiffs of all or nearly all economically beneficial use of their property.

201.    Additionally, or alternatively, an owner whose deprivation is less than complete may nevertheless be entitled to compensation if a regulation caused such a deprivation.

202.    Plaintiffs have reasonable investment-backed expectations to continue to sell their consumable hemp products and operate their businesses. They obtained the requisite licenses, have done whatever is necessary to have their products approved by DHHS for manufacture, sale, and production, and have had an expectation to be able to continue to sell their products on a go-forward basis in accordance with the 2020 Iowa Hemp Bill and the 2018 Farm Bill.

203.    The character of the Hemp Amendments is to eliminate or severely limit the number of hemp businesses operating or selling products in Iowa.

204.    The Hemp Amendments significantly restrict what can be lawfully considered a "consumable hemp product" such that nearly every product manufactured, distributed, and sold by the Plaintiffs (*e.g.*, full spectrum CBD products) will be prohibited in Iowa.

205.    The Hemp Amendments' prohibition and criminalization—and DHHS's ability to confiscate and dispose—of products that are federally legal, compliant with Iowa's State Plan that was approved by the USDA and are currently approved by Iowa, constitutes a regulatory taking because this would deprive the Plaintiffs of all economically beneficial use of that property.

206.    The Hemp Amendments contain no legal sell-through exception for existing product that the Plaintiffs have in their possession as of July 1, 2024.  Plaintiffs have been left with

two choices: 1) keep their products and risk criminal enforcement; or 2) destroy the product with the assistance of Iowa law enforcement. *See* Exhibit D, *Consumable Hemp: HF 2605 FAQ – What it Means, Draft Rules, Townhall Info* (June 2024).

207.     The diminution in value of Plaintiffs' businesses and government interference caused by the Hemp Amendments constitutes a regulatory taking. Nearly all products that retailer Plaintiffs sell, that distributor Plaintiffs sell, and that manufacturer Plaintiffs sell will be illegal in Iowa as of July 1, 2024. Some of the Plaintiffs will be forced to close their doors and cease business operations as a result. Others will be required to conduct layoffs and will experience a sharp decrease in their revenues.

208.     Several of the Plaintiffs' primary inventories and products consist of full spectrum CBD products that will not comply with the Hemp Amendments as of July 1, 2024. Fifty to eighty percent or more of their products will become illegal and will be considered controlled substances due to the serving and container size requirements. Several of the Plaintiffs will be forced to cease their business operations because the Hemp Amendments render the vast majority of their products as controlled substances and illegal, even though such products are federally legal.

209.     For the Plaintiffs who do not source their own products, Plaintiffs' vendors who supply the consumable hemp products will not accept the return of these products.

210.     Consumable hemp products are perishable in nature and have a short shelf-life and cannot just be stored in a different state for an indefinite period of time without risking expiration.

211.     Additionally, the Plaintiffs whose products are manufactured outside of Iowa but are sold from their Iowa businesses will be left with manufactured product that cannot be sold anywhere due to the transportation limitations the Hemp Amendments impose.

212.    The Plaintiffs have all made substantial investments in their businesses based on the established regulatory scheme that has existed in Iowa since 2020 and federally since 2018. As of July, 1, 2024, Plaintiffs' investments, inventory, and entire segments of their businesses will be deemed worthless. Plaintiff Greene Goods, a hemp producer among other titles in the hemp production chain, has plants in the ground awaiting harvest, and has no other course of remedy but to bring this lawsuit.

213.    The quick nature in which the Hemp Amendments will become law compound on the impermissible taking of the Plaintiffs' property. The Hemp Amendments were signed into law on May 17, 2024. Approximately six weeks later, nearly all of the Plaintiffs' inventories will be worthless because they will be prohibited in Iowa.

214.    The Hemp Amendments provide no grace period for producers, manufacturers, distributors, or retailers to shift their business operations, and they provide no sell through period during which products compliant with the current law may be sold up until a certain date. The Plaintiffs' mere possession of noncompliant product is deemed a criminal act, arguably prohibiting the Plaintiffs even from storing their product under lock and key until the constitutionality of the Hemp Amendments is determined.

215.    The retailer Plaintiffs have followed their own practices of not selling their products to people under the age of 21 at all, or at least without a parent being present. The Hemp Amendments do not simply aim to target a public health concern regarding the availability of hemp products to people under the age of 21 years old or the availability of a synthetic product. Instead, the Hemp Amendments go beyond this so-called public health issue to limit even the serving size and container size of consumable hemp products.

216.    The goal of the Hemp Amendments is not to adjust the benefits and burdens of economic life to promote the common good. Rather, the goal is to force the closure of hemp-derived product retail shops in Iowa from selling federally legal products. This is supported by DHHS' own acknowledgement that it "will have limited means to prohibit online sales in Iowa or authority in other states." Exhibit E, *Iowa's Medical Cannabis Program*, https://hhs.iowa.gov/media/13478/download?inline= (last accessed June 23, 2024). DHHS further acknowledges that "products are expected to continue to be readily available in other states and online." *Id.*

217.    DHHS' acknowledgment that the Hemp Amendments were submitted in an effort to draw more business toward the medical cannabis program illustrates that the real character of the Hemp Amendments was to eradicate or, at the very minimum, significantly reduce, the number of retail stores in Iowa selling federally legal hemp-derived products.

## SEVENTH CAUSE OF ACTION

## DECLARATORY RELIEF (28 U.S.C. § 2201)

218.    Plaintiffs incorporate the facts set forth in Paragraph 1 through 217 as though fully set forth herein.

219.    An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning whether the Hemp Amendments and the proposed regulations violate the Supremacy Clause of the United States Constitution, as set forth in the First and Second Causes of Action.

220.    An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning whether the Hemp Amendments and the proposed regulations violate the Due Process Clause under the Fourteenth Amendment of the United States Constitution, as set forth under the Third and Fourth Causes of Action.

221.    An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning whether the Hemp Amendments and the proposed regulations violate the dormant Commerce Clause of the United States Constitution, as set forth in the Fifth Cause of Action.

222.    An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning whether the Hemp Amendments and the proposed regulations violate the Takings Clause of the Fifth and Fourteenth Amendments of the United States Constitution, as set forth in the Sixth Cause of Action.

223.    The Hemp Amendments will be enforceable as of July 1, 2024. Plaintiffs have no plain, speedy, and adequate remedy in the ordinary course of law.

224.    Plaintiffs are therefore entitled to a judicial declaration of their rights and the duties of Defendants under 28 U.S.C. § 2201.

225.    Because the Defendants' actions cause harm that cannot be adequately compensated in damages, Plaintiffs request the Court issue temporary, preliminary and permanent injunctive relief enjoining the Defendants from enforcing the Hemp Amendments and any prospective regulations implementing the Hemp Amendments.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court set this matter for hearing on a preliminary injunction and/or temporary restraining order following review of Plaintiffs' Motion for Temporary Restraining Order and/or Preliminary Injunction to be submitted separately, and award the following relief:

1.    At a minimum, issue an immediate stay of enforcement of the Hemp Amendments until a final, non-appealable judgment is entered in this matter;

2.      Issue a temporary restraining order, a preliminary injunction and permanent injunction prohibiting the enforcement of the Hemp Amendments, any impending regulations, their policies, practices and customs by Defendants, employees and agents, and all persons acting in privity and/or in concert with them;

3.      Enter judgment declaring that the Hemp Amendments, impending regulations, related policies, practices, and customs of the Defendants violate the United States Constitution and may not be lawfully enforced, both now and in the future;

4.      Enter judgment to maintain the status quo, declaring that hemp products which comply with the 2018 Farm Bill's definition of hemp may be produced, manufactured, possessed, used, and sold into and within Iowa;

5.      Grant Plaintiffs reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

6.      Grant all such other and further relief as this Court deems just and proper.

Dated this 25th day of June 2024.

> HW PREMIUM CBD, LLC, AJ's HEALTH AND WELLNESS d/b/a AMERICAN SHAMAN, E. KRIEGER LAND, LLC d/b/a GREENE GOODS MARKET & GREENHOUSES, GREEN ONYX INC. d/b/a YOUR CBD STORE, BEYOND CBD, LLC d/b/a BEYOND CBD, CAMPBELL'S NUTRITION CENTERS, INC., TCI ENTERPRISE, INC. d/b/a SKY HIGH, ICANNA, LLC, YOUR CBD STORES FRANCHISING, LLC, Plaintiffs,

BY:     */s/ Ryann A. Glenn*
> Ryann A. Glenn – # AT0010530
> Alexa B. Barton (NE #27010)
> (*Pro Hac Vice Forthcoming*)
> HUSCH BLACKWELL, LLP
> 14606 Branch Street, Suite 200
> Omaha, NE 68154

Telephone: (402) 964-5000
Facsimile: (402) 964-5050
Ryann.glenn@huschblackwell.com
Allee.barton@huschblackwell.com


Lowell D. Pearson (MO #46217)
(*Pro Hac Vice Forthcoming*)
HUSCH BLACKWELL, LLP
630 Bolivar Street, Suite 300
Jefferson City, MO 65101
Telephone: (573) 635-9118
Facsimile: (573) 634-7854
Lowell.pearson@huschblackwell.com

Matt Kamps (IL #6313183)
(*Pro Hac Vice Forthcoming*)
HUSCH BLACKWELL LLP
120 South Riverside Plaza, Suite 2200
Chicago, IL 60606
Telephone: (312) 655-1500
Facsimile: (312) 655-1501
Matt.kamps@huschblackwell.com

Sierra J. Faler (MO #70050)
(*Pro Hac Vice Forthcoming*)
HUSCH BLACKWELL LLP
4801 Main Street, Suite  1000
Kansas City, MO 64112
Telephone: (816) 983-8000
Facsimile:  (816) 983-8080
Sierra.faler@huschblackwell.com