# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
### WESTERN DIVISION

HW PREMIUM CBD, LLC,
AJ's HEALTH AND WELLNESS d/b/a
AMERICAN SHAMAN, E. KRIEGER
LAND, LLC d/b/a GREENE GOODS
MARKET & GREENHOUSES, GREEN
ONYX INC. d/b/a YOUR CBD STORE,
BEYOND CBD, LLC dba BEYOND CBD,
CAMPBELL'S NUTRITION CENTERS,
INC., TCI ENTERPRISE, INC. d/b/a SKY
HIGH, ICANNA, LLC, YOUR CBD STORES
FRANCHISING, LLC,

      Plaintiffs,

v.

GOVERNOR KIM REYNOLDS in her official
capacity, DIRECTOR OF IOWA
DEPARTMENT OF HEALTH AND HUMAN
SERVICES KELLY GARCIA in her official capacity,
COMMISSIONER OF IOWA DEPARTMENT
OF PUBLIC SAFETY STEPHAN BAYES in his
official capacity, and IOWA SECRETARY OF
AGRICULTURE MIKE NAIG in his official capacity,

      Defendants.

Case No. 4:24-cv-00210-SHL-HCA

---

## PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 2

   I.   The 2605 Requirements Are Unconstitutionally Vague ................................... 2

      A.  The 2605 Requirements fail to provide adequate notice of the proscribed conduct ... 3

         Potency Provision .......................................................................................... 3

         The Synthetic Prohibition & the Warning Label Requirement .......................... 8

      B.  The Vagueness Within the Hemp Amendments Has Resulted in Arbitrary
         Application ...................................................................................................... 9

         The DHHS Product Portal ............................................................................... 10

         DHHS's Enforcement of the Potency Provision.............................................. 12

         DHHS's Enforcement of the Synthetic Prohibition and Warning Label
         Requirement..................................................................................................... 12

  II.  The Court May Consider Plaintiffs' Facial Vagueness Challenge ........................ 13

CONCLUSION AND PRAYER FOR RELIEF ......................................................... 14

# INTRODUCTION

Constitutional guesswork has plagued Plaintiffs and Iowans since July 1, 2024, and stands to continue absent relief. The abject vagueness of the Potency Provision, the Synthetic Prohibition, and the Warning Label Requirement[1] (the "2605 Requirements") forces Iowa farmers, manufacturers, sellers, and consumers of consumable hemp products to risk their businesses and their liberty simply by continuing activity authorized by the U.S. Congress and USDA. Defendants admit manufacturers and retailers are at the mercy of DHHS, as they will continue to be in regulatory limbo for *at least* 30 days and will risk their license registrations – or worse – if they choose to sell non-registered product.

Defendants cannot explain how the 2605 Requirements give Plaintiffs (or any other ordinary person) fair notice of the conduct prohibited or required. Defendants cannot explain how enforcement officials can enforce the Hemp Amendments with the necessary minimal guidance to surpass a facial or as-applied due process challenge. For example, Defendants admitted that, before July 1, 2024, the state possessed *zero* capabilities to determine whether *any* hemp product (containing THC or not) would be legal. And yet, Defendants expected Plaintiffs and Iowan consumers to comply with the law *immediately*.

Plaintiffs have suffered *undisputed* irreparable harm since July 1. Pursuant to the Court's request, Plaintiffs discuss below and submit supplemental evidence to reinforce the Hemp Amendments' grave due process violations, including the constraints, arbitrariness, and harm created by the DHHS "portal system" and the 2605 Requirements overall. The foregoing, coupled with Plaintiffs' prior briefs and arguments submitted during the PI Hearing, point to one proper result: enjoining the Hemp Amendments from being enforced during the pendency of this lawsuit.

---

[1] The Potency Provision, the Synthetic Prohibition and the Warning Label Requirement refer to those terms as used and defined by Plaintiffs in Plaintiffs' Reply Brief in Support of Motion for Preliminary Injunction. *See* ECF 30.

## ARGUMENT

**I.      The 2605 Requirements Are Unconstitutionally Vague.**

Under the void-for-vagueness doctrine, a law may be unconstitutionally vague on its face. This means that a law is vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *Coates v. City of Cincinnati*, 402 U.S. 611, 614, (1971). At times, the U.S. Supreme Court has required those making a facial vagueness challenge to "demonstrate that the law is impermissibly vague in all of its applications." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982). More recently, the Court clarified that a law may still be unconstitutionally vague on its face even if "there is some conduct that clearly falls within the provision's grasp." *Johnson v. United States*, 576 U.S. 591, 602 (2015).

A litigant may also assert that a law is unconstitutionally vague as applied to the litigant. *See F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 258 (2012) (holding that regulation forbidding fleeting expletives and nudity in broadcasts was unconstitutionally vague as applied to multiple broadcast companies). In an as-applied challenge, the court may "leav[e] aside any concerns about facial invalidity," and consider whether the law in question is impermissibly vague as to the conduct of the specific challenger. *Id.* at 254. A court engages in a two-part analysis to determine: (1) whether the law is sufficiently clear and definite to give notice to the specific challenger that his or her actions were prohibited; and (2) whether vagueness in the law resulted in it being applied arbitrarily to the litigant. *See id.*

At a *minimum*, the following 2605 Requirements are unconstitutionally vague as applied to all Plaintiffs: (1) the "Potency Provision" in section 2 of HF 2605; (2) the "Warning Label

Provision" in section 4 of HF 2605; and (3) the "Synthetic Prohibition" in section 8 of HF 2605. These provisions fail an as-applied vagueness challenge as to all Plaintiffs.

**A. The 2605 Requirements fail to provide adequate notice of the proscribed conduct.**

<u>Potency Provision</u>

The vagueness within the Potency Provision alone is sufficient to enjoin the enforcement of the Hemp Amendments. Absent a statutory definition, "words are given their ordinary meaning." *Adam & Eve Jonesboro, LLC v. Perrin*, 933 F.3d 951, 958 (8th Cir. 2019). But as applied to the Plaintiffs, given the consumable hemp products they sell or manufacture, there is no well understood or ordinary meaning of "serving" to provide notice of proscribed conduct.

Defendants contend that "serving" has a "well-understood meaning in the food industry."[2] Even if this were the case, Plaintiffs sell more than just hemp products that can plausibly be deemed as "food." *See e.g.,* ECF No. 10-3 ¶ 7; ECF No. 10-4 ¶ 5. For example, HW CBD sells full spectrum and broad spectrum hemp-based creams, gels, balms, and oils. Exhibit A, Supplemental Declaration of Rick Wagaman ("Supp. Wagaman Decl."), ¶ 6; (ECF No. 10-1 ¶ 12). Similarly, AJ's Health and Wellness sells both full spectrum and broad spectrum hemp-based topical serums, topical creams, oil tinctures, water soluble products, and beauty products. (ECF No. 10-2 ¶ 11). None of these items are food products, so any alleged understanding of "serving" within the food industry is inapplicable. So, too, is the Defendants' reliance and incorporation of Table 2 of 21 C.F.R. § 101.12, which is titled "Reference Amounts Customarily Consumed *Per Eating Occasion*: General Food Supply." (Emphasis added). Even if all products Plaintiffs sell can be characterized as "food," the amounts in Table 2 are not *required* servings by the Food and Drug

---

[2] ECF No. 35 at 1 (*Climbing Kites, LLC et al. v. State of Iowa et al.*, Case No. 4:24-cv-202-SMR-SBJ).

Administration ("FDA"), leaving manufacturers to adjust serving sizes.[3]  Apart from the advisory (rather than mandatory) nature of the serving information in Table 2, it only applies to *food* and not to products such as supplements, drugs, or cosmetics.

Even the definition of "serving" proposed by DHHS only contemplates products eaten or otherwise consumed. *See* Iowa Administrative Bulletin, 6/12/24, Chapter 156 "Consumable Hemp Products" at 10077 ("Serving" means the size or portion customarily consumed *per eating occasion*." (emphasis added)). But the Hemp Amendments' sweep extends well beyond food and beverage hemp products, and applies to the hemp-derived creams, ointments, oils, and beauty products that Plaintiffs sell. Thus, Defendants cannot provide a "widely used and well understood" definition of serving here because a single definition does not exist that would apply clearly to the highly diverse hemp products Defendants are attempting to regulate and criminalize. *Langford v. City of St. Louis*, 3 F.4th 1054, 1059 (8th Cir. 2021). Defendants argued the well understood meaning of a "serving" for products such as creams or ointments is something akin to the "amount typically used at one time." Tr.[4] at 72-73. Forcing Plaintiffs to engage in constitutional, highly subjective guesswork as to how much product a person would "normally use" is wholly inadequate for a law that subjects Plaintiffs to *criminal* penalties.

The Hemp Amendments cannot be saved by reading "serving" to "conform to state and federal requirements and standards," as Defendants claim, given the broad range of hemp-derived products that Plaintiffs sell. (ECF No. 27 at 24). The phrase "serving size" is only used in the food and dietary supplements category, and is not used in reference to drugs or cosmetics. And this would further require Plaintiffs to decide whether certain consumable products, such as gummies,

---

[3] For example, the FDA does not mandate that all single serving cans of soda be 12 fl. oz.; otherwise, the 8 fl. oz. cans that are sold on grocery store shelves would be prohibited.
[4] Tr. as used herein refers to the transcript of the PI Hearing.

are to be identified as a "food" or a "supplement," *which carry two different recommendations by the FDA as to appropriate "serving size."*[5] The same could be true for a candy bar or other food products that Plaintiffs sell. Drugs are provided based upon "dosage" that varies depending on the format of the drug (pill, liquid, topical, injectable, etc.).[6] Cosmetics do not have a serving or dosage size, and instead have "recommended use" instructions that can include recommended amount of product per use (such as a "dime sized amount"), where the recommended amount varies depending on the cosmetic product itself (*e.g.*, a lotion is expected to be used in a greater amount than a face cream, eye shadow, or serum).[7] Topical creams have no serving size noted.[8]

The "container" requirement within the Potency Provision is also vague as applied to the Plaintiffs. Like "serving," no ordinary understanding of the word is helpful to resolve the ambiguity. For example, Sky High manufactures and sells its own hemp-derived gummies. Sky High packages its gummies in 10 individual blister cavities.[9] Exhibit B, Supplemental Declaration of Corey Coleman ("Supp. Coleman Decl."), ¶ 22. The Hemp Amendments beg but provide no answers to questions like the following: Is each individual blister cavity a "serving" and a "container" under the Potency Provision, or does a "container" refer to the entire sheet of blisters? The difference between the interpretations is significant and potentially criminal. If the former,

---

[5] 21 C.F.R. § 101.9(b) (defining serving size and describing how to declare on label); *id.* at § 101.12(b) (providing RACC to determine number of servings per container); Guidance Document, *Food Labeling: Serving Sizes of Foods That Can Reasonably Be Consumed At One Eating Occasion, Reference Amounts Customarily Consumed, Serving Size-Related Issues, DualColumn Labeling, and Miscellaneous Topics*, U.S. Food & Drug Admin. (Dec. 2019), https://www.fda.gov/media/133699/download; Guidance Document, *Dietary Supplement Labeling Guide: Chapter IV. Nutrition Labeling*, U.S. Food & Drug Admin. (Apr. 2005), https://www.fda.gov/food/dietary-supplements-guidance-documents-regulatory-information/dietary-supplement-labeling-guide-chapter-iv-nutrition-labeling.
[6] Guidance Document, *Dosage and Administration Section of Labeling for Human Prescription Drug and Biological Products – Content and Format*, U.S. Food and Drug Administration (Jan. 2023), https://www.fda.gov/regulatory-information/search-fda-guidance-documents/dosage-and-administration-section-labeling-human-prescription-drug-and-biological-products-content.
[7] *Cosmetic Labeling Guide*, U.S. Food and Drug Administration (February 2022), https://www.fda.gov/cosmetics/cosmetics-labeling-regulations/cosmetics-labeling-guide.
[8] *Id.*
[9] The packaging is similar to how pharmaceuticals or some types of gum are packaged in individually sealed cavities with a foil-like backing that must be punched through or penetrated to access each individual item.

then each gummy could, setting aside the vagueness regarding a "serving," have a THC concentration of up to 4 mg and with the entire package containing 40 mg of THC and comply with the provision. Alternatively, Sky High could score one gummy to divide it into four servings of 2.5 mg per serving and 10 mg within each blister container.  If the entire sheet of blisters is considered a container, then each gummy could only contain 1 mg of THC with the entire package containing only 10 mg of THC to comply with the Potency Provision. Similarly, are individual powdered packets within a box a container, or is the entire box a container? Ex. C, Supplemental Declaration of Ashley Powell ("Supp. Powell Decl."), ¶¶ 12-14, 16.  Plaintiffs do not know and the Hemp Amendments do not say.

Despite Defendants' plea to the contrary, the Potency Provision cannot be saved by any ancillary (present or future) DHHS communications to provide Plaintiffs with "fair warning of the criminality of [their] conduct." *Nygard v. City of Orono*, 39 F.4th 514, 520 (8th Cir. 2022). As Defendants admitted, even if consumable hemp licensees proactively uploaded products to the DHHS product portal for approval to sell as of July 1, DHHS would only have reviewed the products for compliance with the law in place. Tr. at 64:6-22.  And even then, DHHS could take up to 30 days to approve any such products. *Id.* at 62:12-14. And Plaintiffs have faced tremendous difficulty in submitting products to their individualized portals after July 1. For products that existed before July 1 that Plaintiffs are uncertain as to their legality, the Plaintiffs cannot resubmit those, as the DHHS system indicates those products have already been submitted, and therefore Plaintiffs have no idea as to whether those products are being re-reviewed or not. As of today, DHHS has not determined whether *any* of the products Plaintiffs have loaded into their portal are approved.  Ex. B, Supp. Coleman Decl., ¶ 12, 17; Ex. C, Supp. Powell Decl., ¶¶ 5, 7-9, 17-18.

DHHS's silence regarding the portal has further hindered Plaintiffs' understanding of the new requirements. Since HF 2605 became effective, Plaintiffs have received no information instructing them on whether they need to seek re-approval for every product in the portal, much less how to enter these products in the portal. Ex. B, Supp. Coleman Decl., ¶ 19; Ex. A, Supp. Wagaman Decl., ¶ 10. Despite Sky High's attempts to seek clarification from DHHS regarding entering products to the portal post-July 1, the only response they received included (1) an instruction to consult with private counsel about compliance issues; and (2) confirmation that DHHS would not approve or deny any product information until a vote on rules are made or a decision is issued by a judge regarding the validity of the amendments. Ex. D, Declaration of Taylor Fairman ("Fairman Decl."), ¶ 9. And, this same communication by DHHS is being relayed to *non-Plaintiffs* within the industry.  Ex. E, Declaration of Ashley Hartman ("Hartman Decl."), ¶ 26. This constitutional guesswork gets worse, however. Plaintiffs are now required to self-identify the THC content per serving and per container when a product is registered. Ex. A, Supp. Wagaman Decl., ¶ 9; Ex. C, Supp. Powell Decl., ¶ 12; Ex. E, Hartman Decl., ¶ 12-13. However, manufacturers and retailers are rarely provided this information on the Certificate of Analysis they obtain to submit to the DHHS. Ex. A, Supp. Wagaman Decl., ¶ 9; Ex. C, Supp. Powell Decl., ¶ 11. Rather, the Certificate of Analysis provides a "total THC content" per *unit* by the laboratory that tests it.  This requires manufacturers and retailers to engage in constitutional guesswork to calculate their own "per serving" and decide what constitutes a "serving" or "container" on an individualized product-by-product basis.  And if Plaintiffs cannot provide this information, the product will not be authorized to be sold.  And if Plaintiffs are *wrong* in the information they provide, they risk the loss of their license as a manufacturer or retailer within Iowa – or criminal

penalties for providing false information once discovered by DHHS.  Ex. C, Supp. Powell Decl., ¶ 20.

Exactly *how* are Plaintiffs to operate their businesses, and sell their products, if Plaintiffs do not know what constitutes a serving or container – which is required information to load products for approval by DHHS? Again, Defendants are forcing Plaintiffs to engage in their own constitutional Hobson's choice, either (1) not selling their products due to the regulatory limbo DHHS has placed them in; or (2) selling their products and risk their own liberty to do so by guessing at the products' compliance with the Hemp Amendments. *See e.g.,* I.C.A. §§ 124.101(20), 124.202, 124.204(4)(m), 124.401(5) and (6), and 204.7(8)(f).

The Synthetic Prohibition & the Warning Label Requirement

Another fatal deficiency with the Hemp Amendments is that HF 2605 requires a warning label to be printed on every container of consumable hemp product, but it fails to state what language must be included, relies on DHHS to promulgate a rule prescribing the language, and fails to extend the effective date of the provision until regulations can be promulgated. Even if the Potency Provision and the Synthetic Prohibition informed Plaintiffs of what products are prohibited (which they do not), the question remains as to how Plaintiffs are supposed to sell *any* consumable hemp product in Iowa without an adopted and effective regulation prescribing the language *required* to be in the warning. At earliest, DHHS proposed regulations can be adopted on or around July 17, 2024, but will not be effective until 35 days thereafter. *See* I.C.A. § 17A.5(2).

Finally, the Synthetic Provision's failure to define "synthetic" presents an insurmountable problem for Defendants. Defendants cannot simply fall back on the argument that "synthetic" "has a readily discernible meaning," evidenced by Defendants' own conduct (ECF No. 27 at 25). Defendants' attempt to offer a definition through briefing: "a hemp product designed for human

consumption, which contains THC that is chemically produced and not naturally occurring." (*Id.*). But DHHS' own proposed definition of "synthetic" differs: (Iowa Administrative Bulletin, 6/12/24, Chapter 156 "Consumable Hemp Products" at 10077, ("Synthetic and semi-synthetic cannabinoids refer to a class of cannabinoids created through a chemical process, and are structurally similar to naturally occurring cannabinoids, or cannabinoids that may occur in very small amounts naturally.")). It also conflicts with the definition of *hemp* at 7 C.F.R. § 990.1, which the Hemp Amendments incorporate via HF 2641 sections 30 and 38. (ECF No. 1-3). Pursuant not only to the federal regulation but also Iowa's Controlled Substances Act ("CSA") cited by Defendants (ECF No. 27 at 25), hemp necessarily must be derived from the plant species *Cannabis sativa* L. and cannot be the product of chemicals that are structurally similar to the plant. Within this framework, the modifier "synthetic" provides no fair notice of what is actually prohibited by the Hemp Amendments. A product that contains THC that is not derived from *Cannabis sativa* L. is already not permitted under Iowa or federal law, so what substances does the Synthetic Prohibition prohibit? The statute neither gives Plaintiffs the guidance and fair notice, nor the Defendants (or supporting law enforcement) guidance as to how to enforce it. Ex. H, Patrick Shatzer Decl. ¶ 8.

**B. The Vagueness Within the Hemp Amendments Has Resulted in Arbitrary Application.**

The second critical question that courts must analyze on an as-applied vagueness challenge is whether the law contains sufficient precision and guidance "so that those enforcing the law do not act in an arbitrary or discriminatory way." *Fox Television Stations*, 567 U.S. at 253. The Eighth Circuit has held that this question is the *crux* of the vagueness doctrine. *See Fields v. City of Omaha*, 810 F.2d 830, 834 (8th Cir. 1987) ("Establishment of such minimal guidelines to govern law enforcement is the crux of the vagueness doctrine."). A law without

9

precision and guidance "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972); *Gerlich v. Leath*, 152 F. Supp. 3d 1152, 1179 (S.D. Iowa 2016) (same); *Planned Parenthood of Greater Iowa, Inc. v. Miller*, 1 F. Supp. 2d 958, 962 (S.D. Iowa 1998) (same). *See also Beckles v. United States*, 580 U.S. 256, 266 (2017) ("An unconstitutionally vague law invites arbitrary enforcement in this sense if it 'leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case...'").  It is just barely two weeks into the effective date of HF 2605 and Defendants are *already* arbitrarily applying the 2605 Requirements amongst the Plaintiffs and others within the consumable hemp industry, further illustrating the unconstitutional vagueness that plagues the Hemp Amendments.[10]

The DHHS Product Portal

DHHS's administration of the product portal it maintains has been inconsistent and arbitrarily applied, illustrating that the Hemp Amendments lack critical guidance for DHHS to enforce – let alone for Plaintiffs to understand what conduct is proscribed. For Sky High, every approved or pending product in its DHHS product portal before July 1 was removed by DHHS, including products that Sky High speculated could have arguably complied with the Hemp Amendments. Ex. B, Supp. Coleman Decl., ¶ 8. Since July 1, Sky High has tried to upload products into its portal for approval, which fail to appear even as "pending." *Id.* at ¶ 10. Yet, Jason Glenn with Beyond CBD still shows Sky High products as approved.  Exhibit F, Supp. Declaration of

---

[10] For Plaintiffs to have standing to pursue their as-applied Due Process claims, it is not required that Defendants first enforce the Hemp Amendments against them. *See Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) ("When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution thereunder, it should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.").

Jason Glenn ("Supp. Glenn Decl."), ¶ 6. Depending upon which method AJ's Health and Wellness uses to view the portal for its Altoona store, the portal either shows that the store has zero approved and/or pending products or it shows only the products loaded after July 1 that are pending approval. Ex. B, Supp. Powell Decl., ¶ 5. The same is true for ICanna. Ex. I, Supp. Miller Decl. ¶ 7. Comparatively, for AJ's Health and Wellness Indianola store, the product portal still shows *every* product that had been approved before July 1, 2024. *Id.* at ¶ 6. This is true for HW CBD and Beyond CBD, as well. Ex. A, Supp. Wagaman Decl., ¶ 7. *See also* Ex. G, Supp. Navin Decl. ¶ 7. More confusingly, ICanna's manufacturing portal shows prdocuts with more than 10mg THC as approved, while the same products have been removed from ICanna's retailer portal. Ex. I, Supp. Miller Decl. ¶ 8.

AJ's Health and Wellness sells Climbing Kites Mixed Berry drinks, which contain four servings that are 2.5mg of THC each, thus making the whole can 10mg per can. Is this permissible to sell at this time? AJ's Health and Wellness does not know if it can sell that product, especially since Climbing Kites testified that the portal shows that none of its products are approved.[11] Ex. B, Supp. Powell Decl., ¶ 16-17. Defendants ultimately admitted that licensees may not sell any products that have cannabinoids unless they have been approved by DHHS through the portal. Tr. at 61-62; 65:10-21.  Plaintiffs equally understand that they may not sell a product unless it is approved in their DHHS portal and worse, if they submit products that are denied it can form the basis of a revocation of their license – or worse under the Hemp Amendments' criminal penalties. *Id.* ¶ 20; *See e.g.,* I.C.A. §§ 124.101(20), 124.202, 124.204(4)(m), 124.401(5) and (6), and 204.7(8)(f).

---

[11] *Climbing Kites*, (ECF No. 36-2 ¶¶ 13-14).

<u>DHHS's Enforcement of the Potency Provision</u>

It will be nearly impossible for DHHS, DPHS and other agencies and law enforcement officials charged with enforcing the Hemp Amendments—and Iowa's Controlled Substances Act concerning noncompliance with the Hemp Amendments—to apply and enforce the Potency Provision in a non-arbitrary, non-discriminatory manner. Because the "serving" requirements seemingly apply only to food products, and are essentially at the determination of the manufacturer or retailer who inputs information into the DHHS portal, how will a DHHS official know whether a tube of hemp-derived lotion or a bottle of hemp-derived oil meets the THC limits per serving? How is a judge to make that determination? A jury? The answer cannot be ascertained by looking to the Food and Drug Act, it cannot be ascertained by a definition of the word in the statute itself, and it cannot be ascertained by determining how much of the product a user would "typically use."

Instead, the statute fully delegates its interpretation to those enforcing the provision, and only after those who risk their retail or manufacturer license to *guess* whether they are inputting the serving and container information correctly.  Defendants contend the Iowa legislature and DHHS cannot define "serving" other than incorporating Table 2's definition for *preemption* reasons. Tr. at 72-73. But the avoidance of one constitutional infirmity (preemption) is not an adequate or permissible reason to create another (void for vagueness), while irreparably harming Plaintiffs' businesses and freedom from arbitrary prosecution and application of the law.

<u>DHHS's Enforcement of the Synthetic Prohibition and Warning Label Requirement</u>

Similar concerns arise with the Synthetic Prohibition. Hemp products that are derived solely from chemicals and not from the plant *Cannabis sativa* L. already do not meet the definition of *hemp* under Iowa and federal law. What, then, does this provision prohibit? Likely, it prohibits products based solely on how a particular individual enforcement officer interprets and applies the

undefined and vague word "synthetic" to a product-at-issue. Different enforcement problems are introduced for the Warning Label Requirement, which demonstrate why this provision is vague as applied to Plaintiffs. Enforcement officials must first wait for DHHS to promulgate a final and effective rule, as must Plaintiffs if they want to sell any product while avoiding the criminal consequences of violating the Hemp Amendments. But what is the official to do with a package of consumable hemp products that contains a label printed before DHHS' publication of its draft rules or before the DHHS rules become effective? If retailers wait until the rules are to be effective, that means that not a single product could lawfully be sold for nearly two months or more.

## II.   The Court May Consider Plaintiffs' Facial Vagueness Challenge..

The Court questioned whether when there is no First Amendment interest, the Court is prohibited from entertaining a facial [vagueness] challenge to an ordinance. *See Sanimax USA, LLC v. City of S. St. Paul*, 95 F.4th 551 (8th Cir. 2024). However, doing so would ignore Supreme Court precedent to the contrary, in which criminal statutes with no First Amendment implications have been found *facially* void for vagueness. *See Sessions v. Dimaya*, 138 S. Ct. 1204, 1223 (2018) (finding in a facial challenge that the residual clause in the Immigration and Nationality Act was void for vagueness); *Johnson v. United States*, 135 S. Ct. 2551, 2556-2557 (2015) (finding in a facial challenge, a sentence enhancement under a residual clause in the Armed Career Criminal Act (ACCA) was void for vagueness);[12] *City of Chicago v. Morales*, 527 U.S. 41, 52-53 (1999) (finding the "ordinance is invalid on its face," while recognizing a "law does not have [to have] a sufficiently substantial impact on conduct protected by the First Amendment to render it

---

[12] In *Johnson*, the Supreme Court reversed the Eighth Circuit, finding the ACCA's residual clause was unconstitutionally vague, and establishing that a law can be void-for-vagueness even if some conduct unambiguously falls within the provision's grasp. *Johnson*, 135 S. Ct. at 2561.

unconstitutional" under the void-for-vagueness doctrine). It also ignores 8th Circuit precedent decided after *Sanimax*. *See United States v. Veasely*, 98 F.4th 906 (8th Cir. 2024) (analyzing whether a statute facially violated the Second Amendment).

And if the Court determines it cannot apply a facial challenge absent a First Amendment issue, as noted in the PI Hearing, it is likely that *at least* the Warning Provision implicates First Amendment protected commercial speech. *See Am. Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 757 (9th Cir. 2019) (holding that required health warnings on advertisements for sugar-sweetened beverages might offend the First Amendment by chilling protected commercial speech). Even if the court characterizes Plaintiffs' challenge "as-applied" or facial—Plaintiffs are likely to succeed on the merits of such due process claims. The Hemp Amendments are unconscionably vague because they (1) fail to provide notice to a person of ordinary intelligence of what is prohibited and (2) fail to provide sufficient standards to law enforcement officials to prevent arbitrary and discriminatory enforcement.

## CONCLUSION AND PRAYER FOR RELIEF

Defendants cannot dispute the irreparable harm Plaintiffs have suffered. Defendants cannot explain the process by which Plaintiffs or *anyone* similarly situated could determine whether a product is lawful after July 1, through its confusing "portal" system, its limited capabilities and significant lapse between submitting products and their approval. Defendants could not articulate what a "serving" is, and admitted that by law, they can never do so without creating a secondary constitutional challenge under the Supremacy Clause. Defendants admitted numerous products Plaintiffs sell, such as topicals, have no "serving size." The result: the Hemp Amendments have kept and will keep Plaintiffs in the dark about what products, conduct, and measures will prevent them from being charged with a serious misdemeanor – or worse, a felony.

14

Accordingly, Plaintiffs contend that the Court should enjoin the enforcement of the *entirety* of the Hemp Amendments until a trial on the merits is had and the Court can determine whether the statutes must be permanently enjoined. But in the instance the Court is inclined to grant a preliminary injunction premised *solely* on Plaintiffs' as-applied Due Process claims, Plaintiffs request the Court enjoin the enforcement of the 2605 Requirements as applied to the possession, manufacture, transportation, distribution, and sale of hemp-derived products and sever the 2605 Requirements from the Hemp Amendments until a trial on the merits is had. *See e.g., Ayotte v. Planned Parenthood of Northern New England*, 546 U.S. 320, 329-31 (discussing the scope of relief and severability when confronting constitutional flaws in a statute). Alternatively, Plaintiffs are agreeable to an injunction that enjoins and severs the 2605 Requirements, while allowing the provision of the Hemp Amendments prohibiting only the sale of consumable hemp products to those under 21 years old to remain.

Dated this 15th day of July 2024.

HW PREMIUM CBD, LLC, AJ's HEALTH AND WELLNESS d/b/a AMERICAN SHAMAN, E. KRIEGER LAND, LLC d/b/a GREENE GOODS MARKET & GREENHOUSES, GREEN ONYX INC. d/b/a YOUR CBD STORE, BEYOND CBD, LLC dba BEYOND CBD, CAMPBELL'S NUTRITION CENTERS, INC., TCI ENTERPRISE, INC. d/b/a SKY HIGH, ICANNA, LLC, YOUR CBD STORES FRANCHISING LLC, Plaintiffs,

BY:  */s/ Ryann A. Glenn*
Ryann A. Glenn – # AT0010530
Alexa B. Barton (NE #27010)
(*Admitted Pro Hac Vice*)
HUSCH BLACKWELL, LLP
14606 Branch Street, Suite 200
Omaha, NE 68154
Telephone: (402) 964-5000
Facsimile: (402) 964-5050

15

Ryann.glenn@huschblackwell.com
Allee.barton@huschblackwell.com

Lowell D. Pearson (MO #46217)
(*Admitted Pro Hac Vice*)
HUSCH BLACKWELL, LLP
630 Bolivar Street, Suite 300
Jefferson City, MO 65101
Telephone: (573) 635-9118
Facsimile: (573) 634-7854
Lowell.pearson@huschblackwell.com

Matt Kamps (IL #6313183)
(*Admitted Pro Hac Vice*)
HUSCH BLACKWELL LLP
120 South Riverside Plaza, Suite 2200
Chicago, IL 60606
Telephone: (312) 655-1500
Facsimile: (312) 655-1501
Matt.kamps@huschblackwell.com

Sierra J. Faler (MO #70050)
(*Admitted Pro Hac Vice*)
HUSCH BLACKWELL LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112
Telephone: (816) 983-8000
Facsimile: (816) 983-8080
Sierra.faler@huschblackwell.com

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on the 15th day of July 2024, the foregoing was electronically served by the court via EDMS on all counsel of record.

/s/ *Ryann A. Glenn*